John T. Crutchlow
CrutchlowJ@sec.gov
Spencer Willig
WilligS@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
Philadelphia Regional Office
1617 John F. Kennedy Boulevard, Suite 520
Philadelphia, PA 19103
(215) 861-9607 / (267) 602-2138

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br> **Plaintiff,** <br><br> v. <br><br> **ALLEN MECHAM,** <br><br> **Defendant.** | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **Civil Action No. <u>1:22-cv-00127-DAO</u>** <br><br> **Magistrate Judge Daphne A. Oberg** |

Plaintiff Securities and Exchange Commission (the "SEC") files this Complaint against

Defendant Allen Mecham ("Mecham") and alleges as follows:

### SUMMARY

1.      Defendant Allen Mecham served as an unregistered broker on behalf of Standard

Oil Company, Inc. ("Standard Oil" or "the Company"), a West Virginia oil and gas company.

2.      Mecham helped raise money for Standard Oil through the offer and sale of

securities to approximately sixty investors via over one hundred securities transactions.

3.      In the period after October 1, 2017, Mecham earned approximately $100,000 in commissions from such sales.

4.      At all relevant times, Mecham was not registered as a broker-dealer with the SEC or associated with a registered broker-dealer.  In fact, in 2010, the Financial Industry Regulatory Authority ("FINRA")[1] had barred Mecham from associating with FINRA members in any capacity.

5.      By engaging in this conduct, Mecham violated Section 15(a)(1) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78o(a)(1)], which prohibits a person who is not a registered broker from inducing the sale of any security.

6.      The SEC seeks to enjoin Mecham from future violations of this provision, as well as disgorgement of his ill-gotten gains, prejudgment interest on such disgorgement, and a civil penalty.  Unless Mecham is enjoined, he will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint, or in acts, practices, transactions, and courses of business of similar type and object.

## JURISDICTION AND VENUE

7.      The SEC brings this action pursuant to Section 21(d) of the Exchange Act.

8.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa(a)].

---

[1] FINRA is a government-authorized not-for-profit organization that oversees broker-dealers in the United States.

9.      The Court has personal jurisdiction over Mecham and venue is proper in the District of Utah because Mecham lives and transacts business in Utah.  Certain of the acts and transactions described herein also occurred in this District.

10.      In connection with the conduct alleged in this Complaint, Mecham, directly and indirectly, singly or in concert with others, made use of the mails or any means or instrumentality of interstate commerce.  For example, wire transfers were used to transfer investor funds to the Company, including at Mecham's direction.

## DEFENDANT AND RELEVANT ENTITY

11.      Mecham is a resident of North Logan, Utah.

12.      Mecham was previously a registered representative of a broker-dealer registered with the SEC.

13.      In July 2010, FINRA barred Mecham from association with any FINRA member (i.e., with any broker or dealer admitted to membership in FINRA) for failing to respond to FINRA's requests for information relating to allegations that he deposited customer funds into his personal account.

14.      Standard Oil is a West Virginia corporation formed in 1998 and headquartered in Parkersburg, West Virginia.  It has never registered with the SEC in any capacity.

## FACTS

15.      Starting in 2014, Standard Oil began acquiring oil and gas wells and rights.

16.      Standard Oil financed its acquisition of oil wells through the sale of securities to individual investors.

17.     The Company communicated to prospective investors that its goal was to buy oil and gas wells while prices were low and thus position the Company for an initial public offering ("IPO") or a sale to another company.

18.     Standard Oil raised more than $24 million from approximately 300 investors through the sale of its securities between October of 2014 and early 2018.

19.     The Company paid individuals on a commission basis to solicit prospective investors and to effectuate investors' transactions in Standard Oil securities.

20.     Mecham was one such person who received transaction-based compensation for his role in soliciting investors for Standard Oil and effectuating investors' transactions in the Company's securities.

21.     Mecham is a former registered representative of a broker-dealer registered with FINRA.

22.     In 2008, that broker-dealer fired Mecham in connection with allegations that he deposited customer funds into his personal account.

23.     In 2010, FINRA barred Mecham from association with any FINRA member following an investigation into that conduct.

24.     In 2014, Mecham's neighbor introduced him to Standard Oil.  Mecham's neighbor had invested in Standard Oil and informed Mecham that Standard Oil was selling equity shares.  Mecham became interested in working with Standard Oil.

25.     Mecham visited Standard Oil's offices and oil fields in July and October 2014.

26.     Mecham began soliciting investors and selling Standard Oil securities in late 2014.

27.     Mecham sold Standard Oil stock and warrants, as well as promissory notes issued by the Company.

28.     Mecham played a key role throughout the investment process for prospective investors in Standard Oil.  In addition to soliciting investors, Mecham provided information to prospective investors about the merits of investing in the Company, opined on the merits of such investments, and answered investors' questions.  When investors decided to invest in Standard Oil, Mecham was heavily involved with the mechanics of the investment process.  Among other things, Mecham helped investors complete paperwork to effectuate investments in the Company; transmitted that paperwork to the Company; provided instructions to investors regarding where and how to transmit funds to the Company to obtain Standard Oil securities; and handled investor funds, including transmitting such funds to the Company in conjunction with investors' transactions in Standard Oil securities.

29.     Mecham frequently relayed information from the Company to prospective investors and to Company shareholders concerning, among other things, the Company's prospects for completing an IPO and the impact an IPO might have on the value of investments in the Company.  He also answered shareholders' questions about the status of their investments and the merits of making further investments in Standard Oil.  Certain shareholders made additional investments in the Company to obtain warrants for more Standard Oil shares in light of information Mecham provided to them regarding the merits of investing in the Company prior to its purportedly-imminent IPO.  Mecham thus made efforts on the Company's behalf to develop and maintain ongoing securities-business relationships with shareholders in addition to his work soliciting new investors.

30.     Mecham further effected the transfer of Company securities to investors by, among other things, exercising warrants to purchase Standard Oil shares and transferring those shares to certain investors he had solicited.

31.     Mecham continued these practices into 2018.

32.     Throughout this period, Mecham found and solicited investors through his network of colleagues, friends, and family members, and their friends and family members.

33.     Standard Oil provided Mecham with information about the Company that he, in turn, provided to prospective investors and used to answer their questions about the merits of investing in the Company.  Mecham also gave prospective investors a pamphlet about the Company that an acquaintance of Mecham's created and Standard Oil's senior management approved.  Mecham put his name and address on the pamphlet for investors to contact him.

34.     Mecham typically met prospective investors at their home or office, or took them to lunch.  He gave them a short presentation about the Company.  Mecham based his presentations on information that the Company's leadership provided to him.

35.     Mecham's presentations typically included representations to prospective investors regarding the merits of investment in the Company, including representations that Standard Oil was seeking to get bought by another company or conduct an IPO.  Mecham responded to questions from prospective investors and discussed the merits of investing at these presentations.  Mecham typically gave such presentations by himself and thus served as the sole representative of the Company to the prospective investors who attended.

36.     The prospect of an initial public offering was one of Mecham's main selling points to prospective investors.  Mecham told investors that the prospect of an IPO at a higher valuation made Standard Oil an attractive investment.

37.     When a prospective investor decided to invest in the Company, Mecham helped them fill out the required paperwork.  Among other things, Mecham assisted investors in completing the Company's subscription agreement by going over each page with the investor as they were filling it out.  Mecham then reviewed the agreement to make sure it was complete.

38.     Mecham also assisted investors with filling out a questionnaire that Standard Oil required prospective investors to complete.

39.     Once Mecham was satisfied that the investment paperwork had been completed correctly, he forwarded it to the Company for processing.

40.     Mecham served as the principal point of contact for several Standard Oil investors navigating the Company's investment process.  He also served as a key point of contact for Company shareholders who had questions about the status of their investments.  Mecham considered himself "the face of Standard Oil to all these investors."

41.     Mecham directly handled investor funds to effectuate transactions in Standard Oil securities.  In one instance, an investor gave Mecham $39,000 in cash for an additional investment in the Company.  Mecham deposited the investor's cash into his own account—despite the fact that Mecham had been fired by a broker-dealer and barred by FINRA for similar conduct—and sent a $39,000 wire to the Company to effectuate that individual's investment.

42.     Mecham also pooled certain investor funds to sell Standard Oil warrants to groups of investors who otherwise could not afford the minimum investment the Company required to issue certain warrants.

43.     Standard Oil paid Mecham in accordance with a transaction-based compensation arrangement through which Mecham earned commissions based on the amount of money he raised from investors.  In particular, Mecham and Standard Oil had an arrangement pursuant to which the Company paid Mecham a percentage of the funds he raised along with incentive compensation for reaching sales targets.

44.     In total, Mecham helped raise nearly $8 million for the Company through the sale of securities to approximately sixty investors.

45.     He received approximately $100,000 in commission payments from the Company for his efforts soliciting investors for Standard Oil during the period after October 1, 2017.

## CLAIM FOR RELIEF

### Violation of Section 15(a) of the Exchange Act

46.     The SEC re-alleges and incorporates by reference the allegations in paragraphs 1-45 as if fully set forth herein.

47.     Mecham, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the SEC as a broker or dealer or associated with an entity registered with the SEC as a broker-dealer.

48.     By reason of the foregoing, Mecham violated, and unless enjoined is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Mecham from directly or indirectly engaging in conduct in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)];

### II.

Ordering Mecham to disgorge his ill-gotten gains and pay prejudgment interest thereon;

### III.

Ordering Mecham to pay a civil penalty pursuant to Section 21(d) of the Exchange Act; and

### IV.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

## JURY DEMAND

Pursuant to Rule 39 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated:          September 30, 2022          Respectfully submitted,


                                            */s/ Spencer Willig*
                                            Julia C. Green
                                            Gregory R. Bockin
                                            John T. Crutchlow
                                            Spencer Willig
                                            Norman P. Ostrove
                                            Attorneys for Plaintiff
                                            Securities and Exchange Commission